492 A.2d 1382

Larry C. HOFFMAN

v.

MEMORIAL OSTEOPATHIC HOSPITAL and John
Battalino, Individually and as an Agent at
Memorial Osteopathic Hospital.

Appeal of Larry C. HOFFMAN at No. 396 Harrisburg, 1982.

Appeal of John BATTALINO, D.O. at No. 397
Harrisburg, 1982.

Superior Court of Pennsylvania.

Argued Aug. 16, 1984.

Filed May 10, 1985.

378

Donald L. Reihart, Assistant District Attorney, York, for appellant (at 396) and appellee (at 397).

Clyde E. Williamson, York, for appellant (at 397) and appellee (at 396).

Christian S. Erb, Jr., Harrisburg, for appellee.

Before WICKERSHAM, JOHNSON and WATKINS, JJ.

JOHNSON, Judge:

Plaintiff Larry C. Hoffman and defendant John Battalino, D.O., each appeal from the judgment entered in favor of Mr. Hoffman on October 27, 1982.

Hoffman instituted an action in trespass against Memorial Osteopathic Hospital ("Hospital") and Battalino for emotional distress, demanding both compensatory and punitive damages. The action was initially heard by an arbitration panel pursuant to the Health Care Services Malpractice Act

(HCSMA), 40 P.S. § 1301.101 *et seq.*[1] Following an award of both compensatory and punitive damages against Battalino and the Hospital, the action was appealed to the court of common pleas. A jury awarded Hoffman $14,000.00 in compensatory damages. A verdict of indemnity was entered by the trial court in favor of the Hospital against Battalino, and delay damages were awarded.

Battalino and the Hospital filed motions for judgment n.o.v. Battalino and Hoffman filed motions for a new trial. All were denied. Hoffman and Battalino then filed the instant appeals.

Hoffman asserts in his appeal that the trial court should have allowed the question of punitive damages to go to the jury. Hoffman also challenges (a) the refusal of the trial court to grant his request for sanctions against Dr. Battalino and the Hospital for their alleged failure to answer interrogatories relevant to the issue of punitive damages, (b) the alleged error by the trial court in excluding evidence concerning the wealth of Dr. Battalino, and (c) the exclusion by the trial court of the verdict entered by the medical malpractice arbitration panel.

Dr. Battalino argues in his cross-appeal that he is entitled to judgment n.o.v. Dr. Battalino argues additionally that the trial judge should not have molded the verdict against him alone. For the following reasons we reverse the determination of the trial court and remand for a new trial.

█ The standard of review with regard to a refusal to grant a motion for judgment n.o.v. was succinctly stated by our Court in *Walsh v. Pennsylvania Gas and Water Company*, 303 Pa.Super. 52, 58, 449 A.2d 573, 576 (1982):

> In reviewing the denial of a motion for judgment N.O.V., the evidence together with all reasonable inferences therefrom must be viewed in a light most favorable to the verdict winner; all conflicts in the evidence are resolved in favor of the prevailing party. *See Gonzalez v. United*

---

**1.** The HCSMA's arbitration provisions have since been declared unconstitutional. *Heller v. Frankston,* 504 Pa. 528, 475 A.2d 1291 (1984); *Mattos v. Thompson,* 491 Pa. 385, 421 A.2d 190 (1980).

*States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979); *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980). Evidence supporting the verdict is considered and the rest rejected. *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968). As we said recently, "A judgment notwithstanding the verdict should be entered only in a clear case, when the facts are such that no two reasonable persons could fail to agree that the verdict was improper. . . ." *Martin v. Soblotney*, 296 Pa.Super. 145, 442 A.2d 700 (1982).

The facts, therefore, when viewed in a light most favorable to Mr. Hoffman are as follows:

On Monday, July 26, 1976 Mr. Hoffman tripped and sprained his back while carrying a box at work. He was seen that day by the company doctor, who suggested that Hoffman see his family doctor if he had any more problems. Hoffman saw his family doctor, Dr. MacDougall, the following Wednesday and Dr. MacDougall could find nothing wrong. On Friday, Hoffman complained that his legs were getting worse, and returned to see Dr. MacDougall who again could find nothing wrong with Hoffman. That evening Hoffman went to York Hospital and, like Dr. MacDougall, the staff at York Hospital could find nothing wrong.

On the evening of July 31, 1976 Mr. Hoffman was taken to Memorial Osteopathic Hospital complaining about pain in his legs. Dr. Battalino, the sole doctor on duty in the emergency room, examined Hoffman on the emergency room's examining table, checking his reflexes and the lower part of his back.

Somehow, Mr. Hoffman went from the table to a chair and when Dr. Battalino told him that he could get up and go home, Hoffman fell on the floor. Dr. Battalino again told Mr. Hoffman that he could get up and go home.

Hoffman could not get up and began to cry. Dr. Battalino then told him that he had sick patients to care for and he walked out of the room. Hoffman, who remained on the floor, pulled himself over to the door and called for help.

He was crying and stating that his legs hurt. Hoffman, while on the emergency room floor, was dressed only in cut-off jeans. He wore no shirt, socks, or shoes, and testified that the floor was cold. He was on the floor for one and one-half to two hours and was not provided with a pillow or a blanket. Hoffman fell asleep for part of the time he was on the floor.

At one point, while Hoffman was lying in the doorway of the emergency room, Dr. Battalino, who had returned, stepped over the patient and informed him again that nothing was wrong and that he could go home. Dr. Battalino had given orders to the Hospital staff not to pick Hoffman up from the floor.

The next day Hoffman's medical problem was diagnosed by Dr. Van Buskirk at York Hospital as Guillian-Barre syndrome, an affliction causing progressive neurological paralysis. Prior to trial Mr. Hoffman stipulated that the conduct of Dr. Battalino and the Hospital did not aggrave te, extend or change the nature of his existing Guillain-Barre disease. At trial Hoffman conceded that his sole claim for the tort of outrage or intentional infliction of emotional distress was based upon his lying on the floor at Memorial Osteopathic Hospital.

Having set forth the facts in a light most favorable to Mr. Hoffman we now turn to the substantive legal issues. The primary legal question to be addressed is whether Dr. Battalino committed the tort of outrage or intentional infliction of emotional distress.

Intentional infliction of emotional distress is an actionable wrong in Pennsylvania. *See Papieves v. Lawrence*, 437 Pa. 333, 263 A.2d 118 (1970); *Bartanus v. Lis*, 332 Pa.Super. 48, 480 A.2d 1178 (1984). This actionable wrong is described in Section 46 of the Restatement (Second) of Torts (1965). Section 46 provides in part:

(1) One who by extreme and outrageous conduct *intentionally* or *recklessly* causes severe emotional distress to another is subject to liability for such emotional distress,

and if bodily harm to the other results from it, for such bodily harm. (Emphasis supplied).

Comment d to Section 46 explains:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Dr. Battalino in the instant case caused Mr. Hoffman no physical injury. The tort of outrage or intentional infliction of emotional distress without physical injury or impact has been recognized in Pennsylvania only in very narrow and clear factual situations. *D'Ambrosio v. Pa. Nat. Mutl. Cas. Ins. Co.*, 262 Pa.Super. 331, 396 A.2d 780 (1978), *aff'd*, 494 Pa. 501, 431 A.2d 966 (1981).

■ The requisite "intention" which one must display for liability to be imposed under the tort of outrage is "knowledge on the part of the actor that *severe emotional distress is substantially certain to be produced by his conduct.*" *Forster v. Manchester*, 410 Pa. 192, 199, 189 A.2d 147, 151 (1963) (emphasis in original).

■ We agree that, under the facts presented, a jury could have reached a verdict for Hoffman. Judgment n.o.v. is not appropriate here since we do not have a clear case where no two reasonable persons could fail to agree that the verdict was improper. *Martin v. Soblotney, supra.*

■ We now turn our attention to the charge given to the jury. If the jury charge is fundamentally erroneous or has a tendency to mislead or confuse rather than to clarify the issues, a new trial will be required so long as that portion of the charge in question might have been responsible for the verdict. *Jones v. Montefiore Hospital*, 494 Pa. 410, 431 A.2d 920 (1981); *Vaughn v. Philadelphia Transportation Co.*, 417 Pa. 464, 209 A.2d 279 (1965). *See also Archer v.*

*Pennsylvania R. Co.* 166 Pa.Super. 538, 72 A.2d 609 (1950) (A new trial was proper where the trial court did not adequately define "negligence").

■ The trial court in its charge to the jury properly paraphrased the language in Section 46 of the Restatement, but did not provide the jury with an explanation of the meaning of the term "intentionally" as used in Section 46 (R. at 358a). The jury, in finding against Dr. Battalino, may have concluded that Battalino was liable merely because he intentionally left the emergency room to treat other patients while Hoffman remained on the floor. Because the jury was not given sufficient instructions by the trial court in its charge, we are constrained to remand for a new trial.

■ Hoffman contends that the trial court improperly refused to charge the jury on punitive damages. We agree and find additional grounds for granting a new trial. Pennsylvania has adopted the rule on punitive damages set forth in Section 908 of the Restatement of Torts. *Chambers v. Montgomery,* 411 Pa. 339, 344, 192 A.2d 355, 358 (1963); *Medvecz v. Choi,* 569 F.2d 1221 (3rd Cir.1977).

Section 908 provides:

(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.

(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Comment (b) to Section 908 goes on to state:

Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.

Since it was appropriate for the trial court to place before the jury the question of whether or not Dr. Battalino committed the actionable wrong of intentional infliction of emotional distress under Section 46, the trial court should also have permitted the jury to consider the question of punitive damages.

 Mr. Hoffman contends that the trial court erred on February 1, 1982 when it refused to admit into evidence the verdict of the medical malpractice arbitration panel where Section 510 of the HCSMA (40 P.S. § 1301.510) provides:

> Where an appeal is taken the decision, and findings of fact, if any, of the arbitration panel shall be admissible as evidence before the court; provided, however, that any award of damages shall not be admissible as evidence.

This issue is without merit.

On September 22, 1980 our supreme court, in *Mattos v. Thompson, supra,* explicitly found Section 309 of the HCSMA (40 P.S. § 1301.309) to be unconstitutional. Any lingering questions about whether Section 510 and other arbitration procedures, exclusive of Section 309, continued to retain vitality were emphatically answered by our supreme court in *Heller v. Frankston,* 504 Pa. 528, 475 A.2d 1291 (1984) when it indicated that the entire arbitration scheme was unconstitutional.

Referring to the *Mattos* decision Chief Justice Nix, speaking for the supreme court, stated:

> [W]e emphasize that in striking down Section 309 we indicated, in the clearest possible language, that the constitutional objection resulted from the arbitration scheme. We did not expressly or implicitly limit our action to the "exclusive" aspect of the panels' jurisdiction. Our holding in *Mattos* rendered invalid the only legislative grant of jurisdiction to the panels. The only body competent to confer a new jurisdictional predicate for the panels would have been the legislature. This the legislature has not done.

*Heller v. Frankston,* 504 Pa. at 537, 475 A.2d at 1296. Since the entire arbitration scheme of the HCSMA was determined to have been unconstitutional at the time of trial, the trial court properly refused to permit the introduction of the verdict of the medical malpractice arbitration panel.

Finally, Mr. Hoffman claims that the trial court should have granted his request for sanctions against Dr. Battalino and the Hospital for their failure to answer interrogatories relevant to the issue of punitive damages.

The interrogatories in question were served upon Dr. Battalino and the Hospital on October 21, 1981, more than two months after a pre-trial conference with the trial court. In a memorandum prepared for the August 12, 1981 pre-trial conference, counsel for Mr. Hoffman informed the court that no additional discovery was required. (R. at 307b). The trial court then gave the parties an opportunity to notify the court, within 14 days, of any corrections or additions to its pre-trial order.

Because Mr. Hoffman's counsel indicated that no additional discovery was desired, and did not submit any corrections or additions to the pre-trial order, we cannot conclude that the trial court abused its discretion by not imposing sanctions. Imposition of sanctions is largely within the discretion of the trial court. *Feingold v. Philadelphia Nat. Bank,* 313 Pa.Super. 579, 460 A.2d 339 (1983). We do not mean to imply, however, that evidence concerning Dr. Battalino's wealth would not have been a proper subject for interrogatories had the interrogatories been served in a timely fashion. As our supreme court indicated in *Arye v. Dickstein,* 337 Pa. 471, 12 A.2d 19 (1940), in cases involving a question of punitive damages, testimony concerning the wealth of the defendant

> may be received when in the opinion of the trial judge it is necessary to indicate what in the nature of punishment should be meted out to a defendant for a malicious act, but its reception should be most carefully safeguarded by

the judge, so that injustice shall not be done to the defendant.

*Id.*, 337 Pa. at 474, 12 A.2d at 20.

Reversed and remanded for a new trial.