**Wachovia Bank N.A. v. Dixon**

514

C.P. of Berks County, no. 04-6251.

*Peter E. Meltzer,* for plaintiff.
*Keith Dixon,* pro se.

LASH, *J.,* August 1, 2006—The matter before this court is the motion of plaintiff, Wachovia Bank N.A., for judgment or, in the alternative, to hold defendant, Keith Dixon, in contempt of court for violation of court order. The essence of the Bank's claim is that Dixon has been obdurate, vexatious and dilatory throughout the litigation and in particular, in the responses he gave in depositions scheduled by the Bank. The Bank believes that Dixon's improper conduct warrants the sanction of the entry of judgment and for attorney's fees. For reasons set forth herein, we grant the Bank's motion in part and award attorney's fees against Dixon.

The Bank filed its complaint against Dixon in May 2004, alleging that Dixon defaulted on the payment of a

$35,000 promissory note.[1] Dixon filed his response on or about June 1, 2004.

In due course, the Bank scheduled a deposition of Dixon for October 22, 2004 at the office of Bank's counsel. Dixon did not appear. Accordingly, on or about April 21, 2005, the Bank filed a motion to compel Dixon's attendance at the deposition. On December 5, 2005, after hearing argument, this court granted the Bank's motion and ordered Dixon to appear for a deposition scheduled by the Bank's counsel.[2]

Dixon did appear for the deposition, which took place on January 9, 2006. However, according to the Bank, Dixon refused to cooperate at the deposition. On or about February 21, 2006, the Bank filed a motion to hold Dixon in contempt of court and for judgment, arguing, among other things, that Dixon's actions were an "attempt to make a mockery of the entire process and to completely evade his obligation to answer all questions truthfully and completely. In other words, this was not a case of a good faith dispute regarding a deponent's obligation to answer one or two isolated questions. Rather, Mr. Dixon was clearly attempting to flout the entire process starting right from the beginning of the deposition."[3]

---

1. There is a separate case filed to no. 04-6250 alleging default on a separate $30,000 note.

2. This matter was not originally assigned to this court, but was assigned to the Honorable Stephen B. Lieberman, who on May 5, 2005 recused himself. Subsequently, on September 30, 2005, the matter was reassigned to Senior Judge Albert A. Stallone, with any matters scheduled for argument to be heard by this court.

3. Plaintiff's motion to hold defendant in contempt of court and for judgment, paragraph 7.

Dixon filed a response on April 3, 2006. He also filed motion to dismiss "due to lack of standing of Wachovia Bank N.A." Argument on Bank's motion was held April 3, 2006.

Upon consideration of the Bank's motion, Dixon's responses, the record and after argument held, this court found it apparent that Dixon was evasive in his answers at the deposition. The court also found the statements contained in Dixon's documents and his responses in argument court to be irregular. Nevertheless, this court was not prepared to impose a sanction at that time without giving Dixon the opportunity to cure his behavior through appearance at a second deposition. Accordingly, on April 3, 2006, the court directed that counsel for the Bank shall schedule a deposition and ordered Dixon to appear. The court also denied the motion to hold defendant in contempt without prejudice.

On May 12, 2006, the Bank filed a "renewed motion for judgment or, in the alternative, to hold defendant in contempt of court for violation of court order." In the new motion, the Bank stated that Dixon did appear for the second deposition, on April 18, 2006, as required. However, Dixon continued to be obdurate and contrary in his answers. Dixon filed a response and brief to the Bank's motion and argument was scheduled for July 10, 2006, but was not held by operation of local rule.[4] In lieu of argument, the court considered the filings of record,

4. At the scheduled time for argument, Bank's counsel and Dixon appeared before this court. Dixon raised his concern that the Bank failed to file a brief in support of its second motion. The Bank believed it was not necessary because this court's order of April 3, 2006 set forth that plaintiff's motion could be refiled "upon informal application." However, the instant motion was not a simple refiling but

including the transcripts of the depositions, and supplemental responses filed by both parties.

The Rule of Civil Procedure relating to the scope of discovery generally appears in Pa.R.C.P. 4003.1, where it states:

"Rule 4003.1. Scope of discovery generally. Opinions and contentions.

"(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter.

"(b) It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"(c) Except as otherwise provided by these rules, it is not ground for objection that the information sought in-

---

averred additional facts, namely, that Dixon had failed to comply with the order of April 3, 2006 by being recalcitrant in his actions and responses at the second deposition. Under these circumstances, it was incumbent upon the Bank to file a brief, and its failure to do so resulted in the matter being disposed of through Berks County Rule 211.5(b), which sets forth that upon failure of a party to file a brief, the matter shall be resolved by the documents filed in the record, without argument.

volves an opinion or contention that relates to a fact or the application of law to fact."

We find that the questions posed by plaintiff's counsel in the depositions of Dixon were proper, designed to lead to the discovery of admissible evidence. We find, as well, that Dixon engaged in tactics which thwarted this purpose, as his responses were improper and evasive. His responses to many questions fell just short of an outright refusal to answer.

In the first deposition, Dixon engaged in a jousting match with the Bank's counsel, answering questions with questions and providing circular reasoning. Additionally, he refused to acknowledge words and their plain meaning. For example, the following exchange occurred:

"Q: If there was a bank account surely there would have been deposits into the bank account?

"A: If there was a bank account, I would assume there would have been.

"Q: What would have been the source of those deposits?

"A: Again, I don't recall.

"Q: Didn't you say that Keith Dixon Warehouse Supply earned no money and made no income?

"A: That is right.

"Q: But there was a bank account?

"A: What's your definition of income? Please define that.

"Q: Was there any gross income?

"A: What is gross income? Please define that.

"Q: Did it earn any money?

"A: Define money, please. I'm asking you."[5]

Another exchange occurred shortly thereafter:

"Q: Are you familiar with the company known as Keith Dixon Systems?

"A: Systems, is that what you're saying?

"Q: Yes.

"A: This says 'System'.

"Q: I'm asking you Systems?

"A: I fail to understand where 'Systems' has to do with Keith Dixon System in the complaint.

"Q: I'm asking if you are familiar with a company known as Keith Dixon Systems or System, either one?

"A: It was something that I probably used up until four, five years ago, maybe six, seven.

"Q: What do you mean something you probably used?

"A: I work as myself. So I put the word System behind it.

"Q: What do you do when you say you work? What is the occupation?

"A: I work as myself. I sell parts and fittings and different things to machinery, for people who own machinery.

"Q: You earn no money from doing this?

"A: What's the definition of money?

"Q: You don't know what money means?

---

5. Notes of Deposition, January 9, 2006, p. 16.

"A: I'm asking you. Please provide it."[6]

Also, contained in the first deposition is this give and take:

"Q: Have you ever been employed?

"A: I've worked for someone back in the 1970s, I guess.

"Q: You have self-employed since then?

"A: If that is the conclusion you wish to draw.

"Q: I'm asking you, are you self-employed?

"A: No, I'm not self-employed.

"Q: Have you ever been self-employed?

"A: No, I work as myself.

"Q: Do you earn any income from working as yourself?

"A: No, I have no income.

"Q: How do you support yourself?

"A: I do. Income has never been defined in the title 26 of the Income Tax Code.

"Q: So you never earned any income?

"A: No. Ask the IRS."[7]

During the course of the second deposition, Dixon changed his tactics somewhat, but continued to refuse to answer appropriate questions. In many of Dixon's answers he invoked the Fifth Amendment to the United States Constitution, the right against self-incrimination. However, the questions asked by counsel for the Bank were not designed, and in most cases could not result in

6. Notes of Deposition, January 9, 2006, pp. 17-18.
7. Notes of Deposition, January 9, 2006, pp. 10-11.

the uncovering of evidence that could be admissible against Dixon in a criminal action. For example, the following exchange occurred:

"Q: Have you ever heard of a company called Keith Dixon Systems?

"A: I will invoke the Fifth Amendment not to be a witness against myself . . . .

"Q: Has Keith Dixon Systems ever maintained a bank account?

"A: On a—in which bank?

"Q: Any bank.

"A: Well, I believe I did a long time ago with a bank—actually—no, I retract that, and I'm going to take the Fifth—I'm going to take the Fifth Amendment not to be a witness against myself in this proceeding on that question." [8]

This exchange is representative of many of the questions seeking a simple "yes" or "no" response, with neither answer providing any information that could lead to charges being filed against Dixon.

In addition, Dixon miscategorizes his Fifth Amendment rights, opining that the Fifth Amendment can protect him against civil liability.[9] Dixon also refused to give a signature sample on the basis of the Fifth Amendment.[10]

Under Pa.R.C.P. 4019(a)(1)(viii), the court may, on motion, make an appropriate order for sanctions if a party fails to make discovery or obey an order of court respecting discovery. Under Pa.R.C.P. 4019(g)(1), if a party has

---

8. Notes of Deposition, pp. 22-23.
9. Notes of Deposition, pp. 23 and 33.
10. Notes of Deposition, p. 36.

refused or failed to comply with the Pennsylvania rules for discovery, the court, after opportunity for a hearing, can enter an order compelling compliance, and if the order is not obeyed, the court on a subsequent motion for sanctions may grant the motion and require the party to pay to the moving party reasonable expenses, including attorney's fees, incurred in obtaining the order of compliance and the order for sanctions.

In discussing the type of sanction to be imposed, the Pennsylvania Superior Court in *Pride Contracting Inc. v. Biehn Construction Inc.,* 381 Pa. Super. 155, 553 A.2d 82 (1989), *allocatur denied,* 523 Pa. 643, 565 A.2d 1167 (1989), stated:

"The specific sanction to be imposed under this rule is a matter within the discretion of the trial court. *Hoffman v. Memorial Osteopathic Hospital,* 342 Pa. Super. 375, 385, 492 A.2d 1382, 1387 (1985) . . . . 'The court is required to strike a balance between the procedural need to move the case to a prompt disposition and the substantive rights of the parties.' *Gonzales v. Procaccio Bros. Trucking Co.,* 268 Pa. Super. 245, 252, 407 A.2d 1338, 1341 (1979) . . . . Whether the failure to provide information represents a willful disregard of a court order is also a factor to be considered in fashioning the severity of the sanction. *Roman v. Pearlstein,* 329 Pa. Super. 392, 399, 478 A.2d 845, 848 (1984). See also, *Calderaio v. Ross,* 395 Pa. 196, 150 A.2d 110 (1959)." 381 Pa. Super. at 159, 553 A.2d at 83-84.

This court gave great consideration to granting plaintiff's motion to enter judgment by default. Dixon's actions were not in good faith and have hindered plaintiff's goal of obtaining disposition in a timely man-

ner. Nevertheless, we recognize that judgment by default is an extreme measure, to be meted out in exceptional cases only. At this juncture, the court is not prepared to deny Dixon his day in court. However, his conduct does indeed warrant an award of attorney's fees, both as a sanction and to compel future compliance with the procedural rules. Further, if plaintiff pursues additional discovery and Dixon continues to subvert the process of discovery through his actions, a new motion for sanctions may result in imposition of judgment against Dixon.

Plaintiff has requested attorney's fees totaling $3,040. Upon review of the itemization and in consideration of the quantity of work performed, this court finds appropriate a sanction of $2,000[11] to be divided equally between the two cases.

We enter the following order:

## ORDER

And now, August 1, 2006, upon consideration of plaintiff's renewed motion for judgment, or in the alternative, to hold defendant in contempt of court for violation of court order, response thereto, and upon review of the file, said motion is granted. Defendant shall be redeposed a third time, if requested by the plaintiff or its counsel. Further, sanctions are awarded in favor of plaintiff and against defendant in the amount of $1,000 on the above-captioned case and $1,000 to action no. 04-6250.

---

11. This court specifically rejects the first entry of 1.3 hours performed on December 5, 2005, which related to work performed prior to this court granting plaintiff's motion to compel attendance at deposition.