579 A.2d 407

**Craig A. NOYES and Kay Noyes, Appellants,**

v.

**Homi COOPER, M.D., Joseph Ferris, M.D. and
General Electric Company.**

**Craig A. NOYES and Kay Noyes,**

v.

**Homi COOPER, M.D., Joseph Ferris, M.D. and General
Electric Company, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 20, 1989.

Decided July 24, 1990.

Reargument Denied Sept. 10, 1990.

594

Bruce W. Bernard, Erie, for appellants (at 108) and appellees (at 187).

John M. McLaughlin, Erie, for appellants (at 187) and appellees (at 108).

Before McEWEN, POPOVICH and MONTGOMERY, JJ.

McEWEN, Judge.

These consolidated appeals [1] have been taken from the judgment n.o.v.[2] entered by the trial court in favor of the

---

**1.** Appeal No. 108 Pittsburgh 1989 was filed by Craig and Kay Noyes while the Appeal at No. 187 Pittsburgh 1989 was taken by Drs. Cooper and Ferris and the General Electric Company.

**2.** The final order upon which judgment was entered provided:

AND NOW, this 10th day of January 1989, upon reconsideration of our Order of December 13, 1988, for the reason that we failed to rule on two of Plaintiffs' post-trial motions, we enter the following Amended Order:

1. Plaintiffs' motion to mold the verdict is GRANTED and the prothonotary is directed to mold the verdict to read in favor of Plaintiff, CRAIG A. NOYES in the amount of $160,000 and in favor of Plaintiff, KAY NOYES, in the amount of $20,000 and against Defendants, HOMI COOPER, M.D., JOSEPH FERRIS, M.D. AND THE GENERAL ELECTRIC COMPANY.

2. Plaintiffs' motion to amend the record is GRANTED, and the record should reflect that during their deliberations, the jury inquired of the trial judge as to whether or not medical expenses were to be awarded to the plaintiffs, and the court responded in the negative.

3. Plaintiffs' motion for a new trial as to punitive damages is refused and said motion is DISMISSED.

defendants, Homi Cooper, M.D., Joseph Ferris, M.D. and General Electric Company, following a jury verdict in the amount of $180,000 [3] in favor of Craig and Kay Noyes (hereinafter "plaintiffs") in this action for fraudulent misrepresentation.

Craig Noyes injured his back on April 24, 1985, while lifting a 75 lb. bearing assembly in the course of his employment with the defendant, General Electric. Plaintiff was treated by the defendants, Dr. Cooper and Dr. Ferris, at General Electric's dispensary from the date of the injury until August 6, 1985. X–rays and CT scans of the plaintiff's back, performed on June 17, 1985, revealed an old fracture of the L–5 vertebrae and a bulging disc. However, plaintiff was not informed of these findings by the defendants. The defendants continued to treat the plaintiff's back conservatively, eventually discharging the plaintiff on August 5, 1986, after sixty-five visits.

Plaintiff testified that he was told by the defendants that the injury to his back was resolved and that there was "nothing wrong with his back" but that he would have "good days and bad days" and would have "to learn to live with it". Plaintiff testified that he sought no further treatment for his back, despite constant pain, due to the diagnosis of the defendant doctors that his pain was not caused by any physical condition of his back but rather had a psychological origin. Mr. Noyes testified that while he experienced dull pain in his lower back constantly after April 24, 1985, the pain often became severe even as a result of normal activities such as bending, squatting, lifting or turning.

When plaintiff was subsequently hospitalized for unrelated problems in the fall of 1985 by Dr. Norman Rudolf,

4. *Defendants' motion for judgment N.O.V. is GRANTED and I* hereby enter judgment for the defendants.
5. Defendants' motion for a new trial is refused and said motion is DISMISSED.

**3.** The jury awarded appellant Craig Noyes $160,000 in compensatory damages, and awarded Kay Noyes $20,000 on her loss of consortium claim.

Dr. Cooper called Dr. Rudolf and suggested to him that the plaintiff suffered from "mental problems". A few months later, in February of 1986, the plaintiff visited Dr. Keith Parrish, a chiropractor, seeking treatment for cervical pain. Dr. Cooper called Dr. Parrish on February 18, 1986, and informed Dr. Parrish that the plaintiff had mental problems rather than musculoskeletal problems and that any treatment rendered by Dr. Parrish would not be covered by workmen's compensation as it was not work related.

Dr. Parrish, in order to provide treatment to the plaintiff, requested that the defendants provide copies of "any and all health records ... including x-rays...." relating to the plaintiff. The medical records provided by the defendants in response to Dr. Parrish's request did not contain the June 17, 1985, CT scan report which revealed a "bulging of the annulus fibrosus of the L4–5 disk ... and an old appearing ununited pars inter-articularis fracture of the left L–5". While these records were never provided to Dr. Parrish or the plaintiff, the old fracture and bulging disc were discovered as a result of x-rays taken by Dr. Parrish. The plaintiff, after being informed of the x-ray findings, continued with conservative treatment until December 10, 1987, when he underwent a spinal fusion which relieved the pain which he had experienced since April 24, 1985.

Plaintiff sought to establish at trial that he suffered from spondylolysis at L–5 which caused him constant pain between April 24, 1985, and December 10, 1987. Plaintiff alleged that the defendants were aware of and actively concealed the existence of the old fracture and bulging disc in order to wrongfully deprive him of workmen's compensation benefits. Plaintiff also sought to establish that the telephone calls made by Dr. Cooper to plaintiff's treating physicians were made for the sole purpose of wrongfully depriving plaintiff of workmen's compensation benefits.

The jury awarded Craig Noyes $160,000 in compensatory damages for pain and suffering, and loss of life's pleasures

for the eight month period[4] during which he did not seek medical treatment for his back pain due to the defendants' fraudulent misrepresentations as to the source of his symptoms. Plaintiff Kay Noyes was awarded $20,000 for loss of consortium for the same period.

The trial court, however, granted the motion for judgment n.o.v. filed by the defendants on the basis that "the testimony of plaintiffs' own witnesses, Doctors Parrish and Carneval, reveals that there was no damage to the plaintiff that was caused by the defendants' actions." The trial court provided the following explanation of its decision to grant judgment n.o.v.:

> At trial, plaintiffs' witness, Dr. Carneval, was posed a hypothetical question. In this hypothetical question, there were two courses of action which could be taken regarding the plaintiff's back pain. Option one was for the plaintiff to adjust and try to live with this condition. Option two was a spinal fusion operation. The hypothetical question described the condition of the plaintiff during the complained of period, and how his condition had been improving. The witness responded by stating that this would show that the patient had adjusted to the situation, that he could live with it, and thus "a spinal fusion would not be indicated at that particular point," and, if he had been the surgeon on August 7, 1987, instead of a year later, "we wouldn't have presented it (spinal fusion) as an option."
>
> The testimony of a second expert testifying for the plaintiff, Dr. Parrish, corroborated the earlier testimony of Dr. Carneval. Dr. Parrish was asked on cross examination whether it was correct to say that it was not appropriate to abandon conservative treatment (in favor of surgery) until December, 1986, to which the witness responded in the affirmative. Dr. Parrish was also asked what different treatment he would have rendered if he had had the

4. The eight month period which underlies plaintiffs' claim is the period through which the condition disclosed by the diagnostic tests on June 17, 1985, was concealed until the x-ray examination of Dr. Parrish in February, 1986.

CT scans, to which he responded that he would have done nothing different.

Thus, the plaintiffs' own witnesses provided evidence that there was no damage to the plaintiff because they would not have operated any sooner; and would not have done anything different beyond conservative treatment until December, 1986, which is beyond the complained of eight-month period. Therefore, the fifth element required for a finding of fraud has not been established, thereby precluding a finding of fraud. The law permits no recovery on the evidence presented at trial. Because the plaintiff has failed to establish his case, a judgment notwithstanding the verdict is proper.

■ We are constrained to vacate that portion of the trial court's order which granted judgment n.o.v. in favor of Dr. Ferris and Dr. Cooper.[5]

The theory of the plaintiffs' case was that Craig Noyes, had he been apprised of the findings of the x-ray and CT examinations of June, 1985, would have sought treatment for his back pain and would have thus realized, *eight months earlier*, that he required surgical intervention since he could not tolerate the pain. The trial court, in concluding that there was no evidence of damages upon which to sustain the verdict, disregarded the testimony of the plaintiff that he suffered constant pain from April 24, 1985, until the surgery on December 10, 1987.

Dr. Carneval testified that the procedure which the plaintiff underwent on December 10, 1987, "is an operation to relieve pain." Thus, "what might be a surgical indication in one patient, since they can't tolerate the pain, would not be an indication for surgery in another patient with the exact same problem who can tolerate pain."

The plaintiff alleged and the jury accepted that he would have obtained treatment between June 17, 1985 and February of 1986, and would have realized, eight months earlier,

5. For reasons set forth hereinafter, judgment n.o.v. was properly entered in favor of Defendant General Electric Company.

that surgery was his only viable alternative. The basis for plaintiffs' suit was that the fraudulent misrepresentations of the defendant doctors caused plaintiff, Craig Noyes, to suffer unnecessarily for eight months.

We have reviewed the entire record and find, unlike the trial court, that there was sufficient clear and precise evidence upon which the jury could find that Dr. Cooper and Dr. Ferris fraudulently misrepresented the plaintiff's medical condition, intending the plaintiff to rely on the misrepresentation, and that the plaintiff, in reliance thereon, ceased medical treatment, resulting in a delay of eight months in ultimately obtaining relief through surgery. The trial court, in ruling upon the motion for judgment n.o.v. improperly weighed the conflicting evidence and disregarded the testimony of the plaintiff, an improper usurpation of the function of the jury. *See: Person v. C.R. Baxter Realty Company*, 340 Pa.Super. 537, 541 n. 2, 490 A.2d 910, 912 n. 2 (1985).[6]

 General Electric contends that judgment n.o.v. was properly entered in its favor in any event since, pursuant to Section 303(a) of the Workmen's Compensation Act, 77 P.S. § 481(a),[7] it may not be held directly or vicariously liable to plaintiffs under any theory. *See: Poyser v. New-*

---

6. Defendants' argument, that judgment n.o.v. was properly entered in their favor since "there was no expert testimony as required nor any other evidence to show that defendant's alleged delay of either surgical or conservative treatment was the legal cause of the pain complained of", merits but summary rejection. There was more than sufficient evidence, i.e., the testimony of plaintiff and his treating physicians, which, if accepted by the jury, would support a finding that the defendants' fraudulent misrepresentations, made with the intent of wrongfully depriving plaintiff of workmen's compensation benefits, were the legal and actual cause of the pain suffered by the plaintiff during the eight month period in which he did not seek medical treatment.

7. Section 303(a) of the Act provides:
 (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.
 77 P.S. § 481(a).

*man & Company, Inc.,* 514 Pa. 32, 522 A.2d 548 (1987). General Electric correctly asserts that while it did not raise the defense of immunity from suit for an intentional tort based on the exclusivity clause of the Workmen's Compensation Act in the trial court, it may be raised on appeal since the Act deprives the Court of Common Pleas of jurisdiction over the subject matter. *LeFlar v. Gulf Creek Industrial Park #2,* 511 Pa. 574, 580–82, 515 A.2d 875, 879 (1986); *Winfree v. Philadelphia Electric Co.,* 520 Pa. 392, 396–98, 554 A.2d 485, 487 (1989). *See also: Barber v. Pittsburgh Corning Corp.,* 521 Pa. 29, 37–40, 555 A.2d 766, 771–772 (1989). We agree that General Electric cannot, as a result of Section 303(a) of the Workmen's Compensation Act, be held either directly or vicariously liable to plaintiff for any harm caused by acts of its employees, regardless of whether the conduct was intentional or negligent. Judgment n.o.v. was, therefore, properly entered in favor of General Electric.[8]

While the entry of judgment n.o.v. in favor of Dr. Ferris and Dr. Cooper was error, we are unable to reinstate the verdict of the jury as to these two defendants since we find merit in their argument concerning the court's instructions on the elements of fraudulent misrepresentation. We are also persuaded by the argument of plaintiffs that upon retrial the issue of punitive damages must be submitted to the jury.

■■■ Defendants contend that a new trial is required by reason of the error in the following italicized portion of the charge concerning the elements of fraudulent misrepresentation:

If you find that the defendants made a misrepresentation to the plaintiff, then you go on to the second element which is, that the misrepresentation made by the defendants to the plaintiff was fraudulent. So if you find

---

8. "[A] reviewing court may affirm the decision of the trial court if the result is correct on any ground without regard to the grounds relied upon by the trial court." *Butler v. DeLuca,* 329 Pa.Super. 383, 388–89, 478 A.2d 840, 843 (1984). *See: E.J. McAleer & Co. v. Iceland Products, Inc.,* 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977).

there was a misrepresentation, then you ask yourself, was it fraudulent. A misrepresentation is fraudulent when the person making the misrepresentation, (a), knows it's untrue, or (b) doesn't believe that it is true, or *is indifferent as to its truth;* or (c), *by reason of special circumstances has a duty to know whether it is true.* That's what makes a statement fraudulent, a misrepresentation fraudulent. [emphasis supplied]

We are constrained to agree that a new trial is required since the jury may have been misled by the charge which, although a correct statement of the law, provided the jury with an erroneous basis upon which to find the defendant doctors liable.

> The primary purpose of a court's charge to the jury is to apprise the members of the jury, in an understandable manner, of the legal principles by which they must decide the case. The law is well settled that the trial court is not required to use any prescribed language in performing this function. Indeed, for a party "to be entitled to a new trial [on the basis of erroneous jury instructions], the instructions complained of must be fundamentally in error, and it must appear that the erroneous instructions might have been responsible for the verdict. *A new trial is also appropriate where the instructions, although perhaps not erroneously stating the law, have misled or confused the jury.*

*Hawthorne v. Dravo Corp., Keystone Division,* 352 Pa.Super. 359, 368, 508 A.2d 298, 302–03 (1986) (emphasis supplied) (citations omitted). *Accord: Jones v. Montefiore Hospital,* 494 Pa. 410, 420, 431 A.2d 920, 925 (1981); *Niles v. Fall Creek Hunting Club, Inc.,* 376 Pa.Super. 260, 268–70, 545 A.2d 926, 931 (1988); *McCann v. Amy Joy Donut Shops,* 325 Pa.Super. 340, 342, 472 A.2d 1149, 1150 (1984).

It is well settled that the scienter element of the tort of fraudulent misrepresentation may be satisfied by actual knowledge on the part of the tortfeasor of the falsity of the representation, reckless ignorance of the matter, or "mere

false information where a duty to know is imposed on a person by reason of special circumstances." *Reimer v. Tien*, 356 Pa.Super. 192, 198–00, 514 A.2d 566, 569 (1986) *quoting Shane v. Hoffmann*, 227 Pa.Super. 176, 181–83, 324 A.2d 532, 536 (1974). *Accord: Smith v. Renaut*, 387 Pa.Super. 299, 305–07, 564 A.2d 188, 192 (1989). The court's charge was in conformity with these principles. Defendants Cooper and Ferris, however, as fellow servants of appellant, could be found liable only for conduct which constituted an "intentional wrong". 77 P.S. § 72 [9] *See: McGinn v. Valloti*, 363 Pa.Super. 88, 525 A.2d 732 (1987), *allo. denied*, 517 Pa. 618, 538 A.2d 500 (1987).

Since the charge of the court suggested that the defendants could be liable on the basis of constructive or legal fraud as well as actual or positive fraud, contrary to Section 205 of the Workmen's Compensation Act, we are required to award a new trial. *See: Spearing v. Starcher*, 367 Pa.Super. 22, 29–31, 532 A.2d 36, 40 (1987).

█ Plaintiffs, in their appeal, also contend that the trial court erred in refusing to submit the issue of punitive damages to the jury. The trial court provided the following rationale for its refusal to submit the issue of punitive damages to the jury:

Pennsylvania case law requires that "punitive damages must be based on conduct which is malicious, wanton, reckless, willful or oppressive." *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984). "Punitive damages may be awarded for conduct that is outrageous due to defendant's evil motive or reckless indifference to the rights of others." *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 374, 492 A.2d 1382 (1985). It is for the court to decide whether to permit an instruction of the

---

**9.** Section 205 of the Workmen's Compensation Act provides:

If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any omission occurring while such person was in the same employ as the person disabled or killed, *except for intentional wrong.*

77 P.S. § 72 (emphasis added).

jury on punitive damages. "The trial judge must determine whether the Plaintiff has presented sufficient evidence to support a punitive damages claim; that is, facts from which the jury might reasonably conclude that the preponderence of the evidence establishes outrageous conduct by the defendant." *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985). We find that the plaintiff has not put forth evidence of outrageous conduct by the defendants so as to merit an instruction on punitive damages, and thus, properly refuse to instruct the jury on this subject.

The rule of punitive damages set forth in the Restatement (Second) of Torts § 908 [10] has been adopted in Pennsylvania. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 168–70, 494 A.2d 1088, 1096 (1985); *Feld v. Merriam*, 506 Pa. 383, 393–95, 485 A.2d 742, 747 (1984); *Chambers v. Montgomery*, 411 Pa. 339, 344–45, 192 A.2d 355, 358 (1963). Comment (b) to Section 908 provides that:

[s]ince the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate—which is to say, conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others.... Reckless indifference to the rights of others and conscious action in deliberate disregard of them (*See* § 500) may provide the necessary state of mind to justify punitive damages....

**10.** Section 908 of the Restatement provides, *inter alia:* Punitive damages are damages ... awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.

Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.

Restatement (Second) of Torts, § 908(1), (2).

We are compelled to the conclusion that it was error, and logically inconsistent, to submit the issue of defendants' liability for intentional, fraudulent misrepresentation to the jury and yet refuse to submit the issue of punitive damages. The defendants, as fellow servants acting within the scope of their employment, could be found liable to the plaintiffs *only* for "actual fraud" and not merely constructive or legal fraud.

Fraud embraces a good variety of actionable wrongs, and may be actual or constructive as it is knowingly or innocently made. *Actual or positive fraud requires a dishonest intent, and consists in deception, intentionally practiced to induce another to part with property, or to surrender some legal right, and which accomplishes the end design.* Constructive or legal fraud, on the other hand, designates a breach of duty tending to deceive others and operating to their injury, although there be no dishonest or vicious intent. It is not fraud as generally understood, but is merely conduct that creates liability and that has therefore some of the consequences of actual fraud. Constructive fraud usually arises from a breach of duty when a relationship of trust and confidence exists.

P.L.E. Fraud § 1, pg. 39 (emphasis supplied).

Thus, "actual fraud" involves conduct which is intentional, wilful, malicious and oppressive. Where the plaintiff's evidence establishes actual fraud, the decision of whether to award punitive damages and the amount to be awarded are within the discretion of the factfinder. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 128–30, 464 A.2d 1243, 1263 (1983). "[I]t is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages." *Id.* Similarly, in the instant case, the evidence of fraudulent misrepresentation presented by plaintiffs, *if accepted by the fact-finder,* would support an award of punitive damages. The issue must, therefore, be submitted to the jury upon retrial of the

matter. *See and compare: Field v. Philadelphia Electric Company,* 388 Pa.Super. 400, 424–28, 565 A.2d 1170, 1182–1183 (1989); *Hoffman v. Memorial Osteopathic Hospital,* 342 Pa.Super. 375, 381–85, 492 A.2d 1382, 1386–1387 (1985).

The judgment n.o.v. entered in favor of General Electric is affirmed. The judgment n.o.v. entered in favor of Dr. Cooper and Dr. Ferris is vacated, and the case remanded for retrial in conformity with the foregoing.